PHILLIP A. TALBERT
United States Attorney
HEIKO P. COPPOLA
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

FILED
Apr 21, 2022
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>        v.<br><br>KAYED BOURI and<br>ZAYED BOURI,<br><br>                Defendants. | CASE NO.   2:22-cr-0084 TLN<br><br>18 U.S.C. § 371 – Conspiracy to Commit an Offense Against the United States; 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) – Criminal Forfeiture |

INDICTMENT

The Grand Jury charges:

KAYED BOURI, and
ZAYED BOURI,

defendants herein, as follows:

## I.   INTRODUCTION

At all times relevant to this Indictment:

1.   Defendant KAYED BOURI was a resident of Sacramento, California in the State and Eastern District of California. KAYED BOURI operated Mediterranean Market, located at 1547 Fulton Avenue, Suite B, Sacramento, California.

2.   Defendant ZAYED BOURI was a resident of Sacramento, California in the State and Eastern District of California and is KAYED BOURI's younger brother. ZAYED BOURI was an

INDICTMENT                                                       1

employee of Mediterranean Market for approximately eight years.

3. The Supplemental Nutrition Assistance Program ("SNAP") was a program through which the United States Department of Agriculture ("USDA") provided food stamp benefits to qualifying individuals in the United States. In California, the SNAP program was administered by Cal Fresh, and food stamp benefits were typically provided to recipients on Electronic Benefit Transfer ("EBT") cards. Businesses selling SNAP eligible food items had to apply to get authorization to accept SNAP benefits in exchange for such items. Federal law in the Food Stamp Act of 1977 and regulations issued pursuant to that act prohibited exchanging SNAP benefits for cash, store credit, and/or ineligible non-food items.

4. Mediterranean Market ("the Market") was owned by KAYED BOURI and Person 1. KAYED BOURI became an owner of the Market in or about March 2011. Based upon its SNAP application, the Market was categorized as a medium-size grocery store and was authorized to accept SNAP benefits starting in or about March 2006. The Market sold SNAP-eligible food items such as cheese, meat, canned goods, bread, and boxed staple foods, among others. The Market also sold SNAP-ineligible items such as hookah pipes, pots, pans, and phone cards.

## II.   THE SUPPLEMENTAL NUTRITION ASSISTANCE PROGRAM

5. The USDA Food and Nutrition Service ("FNS") operates the SNAP program (formerly known as the Food Stamp Program) at the federal level, and further authorizes and monitors retailer stores that redeem SNAP benefits. States, such as California, implement SNAP at the local level, determining eligibility and issuing benefits to eligible households. The purpose of the program is to provide a means for low-income individuals and families to purchase food products for human consumption.

6. In California, FNS and their sub-offices, authorize certain retail stores to accept SNAP benefits for eligible food items from authorized recipients via the EBT ("electronic benefit transfer") system. EBT is an electronic system by which SNAP benefits and/or State public assistance are issued to benefit recipients through a plastic card similar to an Automated Teller Machine ("ATM") card. That card is used at point-of-sale ("POS") terminals located within a retail store authorized to accept SNAP benefits, normally next to the cash register. Each month SNAP benefits are loaded onto a recipient's EBT card based on the recipient's qualified amount.

7. Each EBT card has a magnetic strip containing electronically coded information for the relative account, including the particular recipient and the amount of benefits to which he or she is entitled. When a benefit recipient seeks to purchase eligible food items using SNAP-EBT benefits at an authorized retail store, the cashier or customer will slide the EBT card through the POS terminal. If the POS terminal cannot read the EBT card when it is swiped, the cashier may manually enter the card number in the POS terminal keypad. The customer must then enter a personal identification number ("PIN") on the terminal's keypad to allow the deduction of the SNAP benefits from the customer's account and authorize the sale. The SNAP dollar amount is immediately deducted from the customer's SNAP account and typically credited dollar for dollar to the retailer's bank account within two banking days.

8. To become SNAP authorized, the retailer must submit an application to FNS, followed by site-visits, and categorization of the store based upon inventory. FNS provides the retailer a SNAP permit, and training materials for conducting SNAP transactions. Once the retailer is authorized, the owner may use POS equipment that allows for EBT and commercial debit/credit transactions, or a special POS device that only processes EBT transactions.

9. At the time a retailer is authorized to participate in SNAP, the retailer is informed that it may accept SNAP benefits only from authorized SNAP recipients and only in exchange for eligible food items. On the FNS application to participate in SNAP, the owner/operator of the retailer is required to acknowledge that he or she understands that acceptance of SNAP benefits for cash, firearms, ammunition, explosives, or controlled substances is a violation of SNAP. The owner/operator is also required to acknowledge that he or she understands that SNAP benefits may not be accepted as payment for ineligible items, credit accounts or loans, and that SNAP benefits may not be accepted from people not authorized to use them. As an owner/operator of the Market, KAYED BOURI was aware of these requirements.

### III.    THE CONSPIRACY

10. Beginning at a time no later than in or about March 2011, and continuing thereafter until on or about April 27, 2017, in the State and Eastern District of California and elsewhere, defendants KAYED BOURI and ZAYED BOURI did knowingly and intentionally combine, agree, and conspire

with each other and others known and unknown to the Grand Jury, to commit an offense against the United States, that is, the unauthorized use, acquisition, transfer, and possession of SNAP food stamp benefits that had a value of at least $100, in a manner not authorized by the Food Stamp Act of 1977 and regulations issued pursuant thereto, in violation of 7 U.S.C. § 2024(b)(1).

### IV.   MANNER AND MEANS

In furtherance of the conspiracy, defendants KAYED BOURI and ZAYED BOURI employed the following ways and means, among others:

11. KAYED BOURI, ZAYED BOURI, and others operated the Market and sold items to customers, including customers who typically received SNAP food stamp benefits on EBT cards.

12. KAYED BOURI and ZAYED BOURI allowed SNAP recipients to obtain cash, store credit, and other ineligible items using the customers' SNAP benefits through the customers' EBT cards and accounts. KAYED BOURI and/or ZAYED BOURI would often swipe a customer's EBT card on their POS equipment and then provide cash and other ineligible items in exchange.

13. If the SNAP recipients did not have sufficient funds available in their EBT account, defendants KAYED BOURI, ZAYED BOURI, and others would allow the SNAP recipients to obtain food, cash and other ineligible items on credit. KAYED BOURI and ZAYED BOURI would sometimes retain the SNAP recipient's EBT card to ensure payment at a later time.

14. KAYED BOURI, ZAYED BOURI, and others maintained a ledger that listed the SNAP recipients' names, amount of credit that was extended, and remaining balance owed. In the early years of the conspiracy, KAYED BOURI and ZAYED BOURI kept a physical handwritten ledger, then in later years KAYED BOURI and ZAYED BOURI maintained the ledger electronically on a computer at the Market.

15. When the SNAP recipients received their monthly benefit deposits in their EBT accounts, they would often return to the Market to pay off their debt. KAYED BOURI, ZAYED BOURI, and others would then access the SNAP recipients' account using their name, EBT card and account number to settle the debt.

16. Analysis of SNAP redemption records between in or about March 2011 and on or about April 27, 2017, revealed that the Market's SNAP redemptions were abnormally high for a medium-sized

grocery store when compared against other medium-sized grocery stores within a five-mile radius.

17. USDA financial analysis of thousands of SNAP redemption transaction records between in or about March 2011 and on or about April 27, 2017, revealed an estimated loss to the government attributable to the conspiracy of approximately $1.4 million.

### V. OVERT ACTS

In furtherance of the conspiracy and to effectuate the objects and purposes of the conspiracy, the following overt acts, in addition to others, were committed in the State and Eastern District of California:

18. On or about March 22, 2017, at approximately 8:00 p.m., KAYED BOURI was captured on the Market's internal security video conducting a $152.55 SNAP-EBT transaction with no customers present at the cash register.

19. On or about April 6, 2017, at approximately 2:45 p.m., KAYED BOURI was captured on the Market's internal security video conducting a $400.30 SNAP/EBT transaction with no customers at the cash register.

20. On or about April 10, 2017, at approximately 8:53 p.m., KAYED BOURI and ZAYED BOURI were captured on the Market's internal video conducting a $118.17 SNAP-EBT transaction for a female customer. No grocery bags were observed in the video.

21. On April 21, 2017, at approximately 10:43 a.m., KAYED BOURI was captured on the Market's internal video at the cash register conducting a $118.10 SNAP/EBT transaction with a male customer. No grocery bags were visible.

22. On April 25, 2017, at approximately 4:16 p.m., KAYED BOURI was captured on the Market's internal video at the cash register conducting a $100.00 SNAP-EBT transaction with a male customer. KAYED BOURI provided the customer cash during the transaction.

All in violation of Title 18, United States Code, Section 371.

FORFEITURE ALLEGATION:   [18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) – Criminal Forfeiture]

1. Upon conviction of the offense alleged in this Indictment, defendants KAYED BOURI and ZAYED BOURI shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28

INDICTMENT

U.S.C. § 2461(c), all property, real and personal, which constitutes or is derived from proceeds traceable to such violations, including, but not limited to the following:

    a.    A sum of money equal to the amount of proceeds traceable to such offense, for which defendants are convicted.

2. If any property subject to forfeiture, as a result of the offense alleged in this Indictment, for which defendants are convicted:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 28 U.S.C. § 2461(c), incorporating 21 U.S.C. § 853(p), to seek forfeiture of any other property of said defendant, up to the value of the property subject to forfeiture.

A TRUE BILL.

/s/ **Signature on file w/AUSA**
_____
FOREPERSON

_[signature]_
_____
PHILLIP A. TALBERT
United States Attorney

INDICTMENT

6

No. _ _ _ _ _ _ _ _ _ _

# UNITED STATES DISTRICT COURT

*Eastern District of California*

*Criminal Division*

THE UNITED STATES OF AMERICA
*vs.*

KAYED BOURI, and
ZAYED BOURI

## I N D I C T M E N T

**VIOLATION(S):**   18 U.S.C. § 371 – Conspiracy to Commit an Offense Against the United States; 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) – Criminal Forfeiture

*A true bill,*

/s/ Signature on file w/AUSA
———————————————————
*Foreman.*

*Filed in open court this* __ 21st __ *day*

*of* __ April __ , *A.D.* 20 22

/s/ Jonathan Anderson
———————————————————
*Clerk.*

*Bail, $* _ _ _ _ _ _ _ _ _ _ _ _ _          Summons to issue

GPO 863 525

2:22-cr-0084 TLN

United States v. Bouri, et.al.
Penalties for Indictment

**Defendants**
KAYED BOURI
ZAYED BOURI

| | |
|---|---|
| **COUNT 1:** | **ALL DEFENDANTS** |
| VIOLATION: | 18 U.S.C. § 371 - Conspiracy to Defraud and Commit Offenses Against the United States |
| PENALTIES: | Maximum term of imprisonment of up to five (5) years; or Fine of up to $250,000; or both fine and imprisonment Supervised release of not more than three (3) years |

SPECIAL ASSESSMENT: $100 (mandatory on each count)

| | |
|---|---|
| **FORFEITURE ALLEGATION:** | **ALL DEFENDANTS** |
| VIOLATION: | 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) – Criminal Forfeiture |
| PENALTIES: | As stated in the charging document |